BC



FILED
SEP 15 2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| ROBERT QT BETTIS,<br>Plaintiff,<br><br>vs.<br><br>LANCE WELLS ET AL,<br>Defendant | Case No. 1:25-cv-00892<br><br><br><br>HON. MANISH S. SHAH |

# ***PLAINTIFF'S COMPREHENSIVE RESPONSE & OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS (FULLY SUPPLEMENTED)***

## INTRODUCTION

1. The Maryville Defendants' Motion to Dismiss rests on mischaracterizations of the procedural history, misstatements of controlling law, and omissions concerning the State's statutory delegation of custodial authority.
2. Contrary to Defendants' assertions, Exhibits D, E, and F confirm that both the Illinois circuit court and this Court dismissed Plaintiff's prior cases **without prejudice**.
3. Under Illinois law, a dismissal under 735 ILCS 5/2-1009 "leaves the parties as if no action had been filed." *Hudson v. City of Chicago*, 228 Ill. 2d 462, 468 (2008). Federal Rule of Civil Procedure 41(b) likewise provides that only dismissals expressly "with prejudice," or for failure to prosecute or comply with a court order, operate as adjudications on the merits. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505–06 (2001). The record contains no such adjudication here.
4. Plaintiff's operative Amended Complaint alleges severe abuse and neglect while in the custody of the Illinois Department of Children and Family Services (IDCFS") and placed at Maryville Academy under state contract and licensure.
5. These claims are pled with factual specificity, supported by exhibits documenting dismissal orders, grievance records, and statutory duties, and fall squarely within the plausibility threshold of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

6. The pleading identifies individual defendants, their roles, and the constitutional and statutory duties breached, ensuring compliance with Rule 8 and providing each defendant fair notice.
7. Moreover, Defendants' motion disregards applicable tolling doctrines. Illinois tolls limitations during minority, 735 ILCS 5/13-211, and permits actions for childhood sexual abuse "at any time" under § 13-202.2(f). Federal law recognizes that accrual does not begin until the plaintiff knows of the injury and its cause, and state tolling rules apply unless inconsistent with federal policy. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006). Plaintiff's emancipation in 2019, combined with documented concealment of records and continuing violations, renders these claims timely.
8. Finally, Defendants understate Maryville's role as a state actor. Illinois law imposes a non-delegable duty on IDCFS to provide for the custody, care, and protection of wards of the State. See 20 ILCS 505/5(a). By exercising that custodial authority under IDCFS licensing and contracts, Maryville and its staff acted "under color of law" within the meaning of 42 U.S.C. § 1983. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *K.H. v. Morgan*, 914 F.2d 846, 851–52 (7th Cir. 1990).
9. For these reasons, the Motion to Dismiss should be denied. The record demonstrates that Plaintiff's claims have not been adjudicated on the merits, are timely under federal accrual and state tolling doctrines, and plausibly state constitutional and statutory violations against defendants acting under color of state law. At this stage, dismissal would contravene Rule 12(b)(6), duplicate the Court's prior § 1915(e)(2) screening, and improperly foreclose fact development.

## ARGUMENT

### I. Rule 41(a)(1) "Two-Dismissal" Rule Does Not Apply

10. The State Case Was Dismissed Without Prejudice. Exhibit D (Lake County order, 11/20/24) confirms that Plaintiff's state action was voluntarily dismissed "without prejudice" pursuant to 735 ILCS 5/2-1009, and that the Maryville Defendants' pending motion to dismiss was withdrawn contemporaneously. Illinois law is unequivocal: a dismissal under § 2-1009 is not an adjudication on the merits and does not extinguish substantive rights. The Illinois Supreme Court has held that such a dismissal "leaves the parties as if no action had been filed." Hudson v. City of Chicago, 228 Ill. 2d 462, 468 (2008). Thus, Defendants' reliance on the state dismissal as a merits determination is legally unfounded.
11. The First Federal Case Was Voluntarily Dismissed Under Rule 41(a)(1)(A)(i). Exhibit E (federal notice, 01/04/25) confirms Plaintiff's subsequent federal case was voluntarily dismissed before Defendants filed an answer or a Rule 56 motion. Rule 41(a)(1)(A)(i) expressly authorizes such unilateral dismissal, and Rule 41(a)(1)(B) makes clear that unless otherwise stated, dismissal is "without prejudice." Exhibit F (minute entry,

01/06/25) reflects this point directly, noting termination without prejudice and rendering all pending motions moot.

12. Dismissals Without Prejudice Are Not Adjudications on the Merits. Rule 41(b) provides that only dismissals "with prejudice" or those for failure to prosecute or comply with a court order operate as adjudications on the merits. Neither Exhibit D nor Exhibit E contains any adjudication of the substantive rights at issue. Black's Law Dictionary defines "adjudication on the merits" as "a judgment based on the evidence rather than on technical or procedural grounds." By definition, dismissals without prejudice do not fit this category.
13. The Two-Dismissal Rule Is Narrow and Prevents Abuse, Not Refinement. The "two-dismissal rule" of Rule 41(a)(1)(B) applies only when the same plaintiff dismisses the same claim against the same defendant twice, and courts have cautioned against expansive application. LeBeau v. Taco Bell, Inc., 892 F.2d 605, 607 (7th Cir. 1989). The doctrine exists to prevent harassment and vexatious repetitive filings, not to punish pro se litigants who refine pleadings across fora. See also Poloron Prods., Inc. v. Lybrand Ross Bros. & Montgomery, 534 F.2d 1012, 1017–18 (2d Cir. 1976) (two-dismissal rule applies only where parties and claims are identical). Plaintiff's record shows diligence, not harassment.
14. No Tribunal Has Ever Entered a Substantive Judgment. Exhibits B and C (Amended Complaints and supporting filings) confirm continuity of claims but equally show that no tribunal has adjudicated the merits. The Supreme Court in Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 505–06 (2001), made clear that "adjudication on the merits" is context-specific and does not extend to dismissals explicitly without prejudice. Plaintiff's claims remain viable because they have never been extinguished through a merit's determination.
15. Current Claims Are Narrower and Distinct. The operative Amended Complaint narrows both the number of defendants and the factual theories. This materially distinguishes it from prior broader pleadings and removes it from the scope of the two-dismissal rule. Rule 41(a)(1)(B) applies only to identical claims against identical defendants. Even if some defendants overlap, neither prior dismissal qualifies as an adjudication with prejudice.
16. Seventh Circuit Precedent Confirms Inapplicability. In Dvorak v. Metropolitan Pier & Exposition Authority, 941 F.3d 936 (7th Cir. 2019), the Seventh Circuit held that the two-dismissal rule does not apply where parties or issues differ or where dismissals were without prejudice. This case falls squarely within that reasoning: Plaintiff has refined his claims in good faith, no final judgment has ever been entered, and both prior dismissals were expressly without prejudice.
17. Corrective Conclusion. Defendants' invocation of Rule 41(a)(1)(B) misstates both the record and the governing law. Neither Exhibit D nor Exhibit E constitutes a merits adjudication; both fall within the category of voluntary dismissals expressly permitted by law. The Amended Complaint before this Court is distinct, narrowed, and properly filed. Accordingly, the two-dismissal rule does not bar this action, and Defendants' argument fails as a matter of law.

## II. Statute of Limitations and Tolling

18. **Minor Tolling under Illinois Law.** Plaintiff's claims are timely because Illinois law expressly tolls the limitations period for minors until two years after they reach the age of majority. 735 ILCS 5/13-211(a). Plaintiff was a ward of the Illinois Department of Children and Family Services ("IDCFS") until emancipation in 2019. That wardship constituted a legal disability, and the statute did not begin to run until after emancipation. Accordingly, the earliest possible accrual date for limitations purposes is 2019, not the dates of the underlying misconduct.
19. In addition, Plaintiff's circumstances further warrant tolling. Plaintiff has documented mild intellectual disability, PTSD, depression, and related disorders, conditions that impaired his ability to navigate the legal system without assistance. These disabilities, coupled with ongoing reliance on IDCFS aftercare services, including housing support and open case services provided past 2019, demonstrate that Plaintiff remained under continuing state influence and functional disability beyond the age of majority.
20. Courts applying § 1983 in custodial and disability contexts recognize that such conditions justify equitable tolling when combined with delayed discovery and ongoing concealment. See *Shropshear v. Corp. Counsel of Chicago*, 275 F.3d 593, 595–96 (7th Cir. 2001) (equitable tolling applies where disability or concealment prevented timely filing)
21. Plaintiff's functional disability is documented and ongoing. Through the Illinois Division of Rehabilitation Services, Plaintiff has received continuing assistance including personal assistant services, housing subsidies, transportation vouchers, vocational rehabilitation, educational support, and disability counseling. These services confirm that Plaintiff remained under continuing state support and functional disability beyond the age of majority, making it unreasonable to expect earlier legal action without assistance. Such conditions, combined with IDCFS's concealment of records, bring this case squarely within the equitable tolling framework recognized in *Shropshear v. Corp. Counsel of Chicago*, 275 F.3d 593, 595–96 (7th Cir. 2001).
22. **Continuing Violation in Custodial Settings.** The Amended Complaint alleges a continuing and unitary course of misconduct: systemic abuse, forced medication, psychiatric confinement, and placement failures while Plaintiff was in Maryville custody. These were not discrete, one-time acts, but ongoing conditions that persisted daily until Plaintiff's removal. The Seventh Circuit has squarely held that in custodial environments, ongoing deliberate indifference accrues only when the violation ends. *Heard v. Sheahan*, 253 F.3d 316, 318–19 (7th Cir. 2001). While *Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 801–02 (7th Cir. 2008), cautions against recasting discrete harms as "continuing," Plaintiff's allegations fall on the *Heard* side of the line: the harm arose from continuous custodial conditions, not isolated incidents.
23. **Fraudulent Concealment and Equitable Doctrines.** Exhibits B and C demonstrate that IDCFS and its contractors withheld records and obstructed Plaintiff's FOIA requests, directly delaying discovery of the full extent of injuries and identities of responsible actors. Illinois codifies fraudulent concealment at 735 ILCS 5/13-215, which provides that where concealment occurs, a plaintiff may sue within five years of discovering the

cause of action. Federal law governs accrual, claims accrue when the plaintiff knows or should know of the injury and its cause—but state tolling doctrines apply unless inconsistent with federal policy. *Devbrow v. Kalu*, 705 F.3d 765, 767–68 (7th Cir. 2013); *Shropshear v. Corp. Counsel of Chicago*, 275 F.3d 593, 595–98 (7th Cir. 2001). Because concealment delayed Plaintiff's ability to connect his injuries to specific actors, the limitations period did not run during concealment.

24. **Timeliness After Emancipation and Discovery.** Plaintiff filed suit within the equitable window following emancipation and upon access to suppressed records. Under *Devbrow*, accrual occurs only when the plaintiff knows both the injury and its cause. The clock does not run while the violation continues or where defendants have concealed the operative facts. Here, both doctrines apply: Plaintiff remained in continuous custodial violation until 2019 and was further obstructed by concealment thereafter.
25. **Childhood Sexual Abuse Claims.** To the extent Plaintiff's allegations include custodial sexual assault, those claims are independently timely under Illinois law. Section 13-202.2 provides that the limitations period does not begin before age 18, that a plaintiff has 20 years from discovery to file, and that "an action for damages based on childhood sexual abuse may be commenced at any time" if not already time-barred when the statute was enacted. 735 ILCS 5/13-202.2(b), (d), (f). The Illinois Supreme Court has recognized the broad remedial reach of this statute. *Doe v. Diocese of Dallas*, 234 Ill. 2d 393, 411–12 (2009). Thus, any sexual abuse allegations are timely regardless of tolling under other provisions.
26. **Interaction with § 1983.** Federal courts borrow Illinois' two-year limitations period for § 1983 actions, but they apply state tolling rules and federal accrual rules. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under this framework, Plaintiff's claims are timely because (a) minority tolling delayed accrual until emancipation, (b) fraudulent concealment further suspended accrual, and (c) the continuing-violation doctrine deferred accrual until Plaintiff's removal from custody. *Heard* and *Devbrow* confirm this interaction: accrual is postponed until the violation ends or discovery occurs, and Illinois law suspends the clock until after disability and concealment are resolved.
27. **Corrective Conclusion.** Defendants' limitations defense fails as a matter of law. The record establishes that: (1) Plaintiff was under legal disability as a ward until 2019, tolling all claims; (2) the violations alleged were continuous and custodial, ending only upon emancipation; (3) concealment delayed discovery of the full scope of claims; and (4) childhood sexual abuse claims are independently timely under 735 ILCS 5/13-202.2. Plaintiff's § 1983 claims and state-law claims are therefore timely and not subject to dismissal at the pleading stage.

## III. Defendants' Collective Limitations Defense Is Procedurally Defective and Prejudicial

28. The Motion to Dismiss lumps "Defendants" together, names a law firm, and never identifies which defendant advances which limitations theory or how accrual and tolling apply to each party's distinct conduct. That deprives you of fair notice and the ability to respond defendant-by-defendant. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009)

("each defendant is entitled to know what he or she did that is asserted to be wrongful"); *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) (no liability without personal involvement). 09.04.25 Motion to Dismiss FILED

29. § 1983 liability is personal. Group briefing obscures who raises what defense and when each claim accrued, which matters because accrual, concealment, and continuing-violation analysis are defendant-specific. *Williams v. Ramos*, 71 F.3d 1246, 1250–51 (7th Cir. 1995).
30. A law firm is not a party or a "person" under § 1983. Only the attorney of record represents identified defendants. Generic references to "Defendants" under a firm masthead violate Rule 8's notice function and impair your ability to address individualized statute-of-limitations arguments. See *Brooks*, 578 F.3d at 580 (fair-notice pleading).
31. One attorney purporting to represent all defendants with potentially conflicting § 1983 exposure aggravates the prejudice: it permits shifting, inconsistent limitations arguments in reply, while denying you clarity up front. Conflicts in joint representation are a recognized concern. *Glasser v. United States*, 315 U.S. 60, 70 (1942); *Holloway v. Arkansas*, 435 U.S. 475, 490 (1978).
32. **Remedy.** The Court should deny the limitations defense as presented; or, at minimum, order a clarified, defendant-specific brief that states, for each defendant, the accrual date asserted, the tolling doctrine challenged, and the facts relied upon. Anything less prejudices the pro se plaintiff and undermines orderly adjudication. 09.04.25 Motion to Dismiss FILED

## V. Maryville Defendants as State Actors

11. As pled in the Amended Complaint (¶¶ –), Defendant Gaston denied a protective transfer despite knowledge of credible threats, Defendant Smith neglected Plaintiff's daily needs, and Defendant Carr physically assaulted Plaintiff while exercising IDCFS-delegated authority. These actions are not private missteps but breaches of statutory duties (325 ILCS 5/4; 89 Ill. Admin. Code § 331.30), making them fairly attributable to the State under West v. Atkins, 487 U.S. 42, 54–57 (1988)
12. Maryville's role was not that of a private entity operating independently, but of a contracted arm of the Illinois Department of Children and Family Services ("IDCFS"). Exhibit B identifies Maryville jointly with IDCFS personnel and co-contractors, confirming its role within the statutory framework governing the custody of state wards. Illinois law requires that all foster care providers operate under IDCFS licensing and contractual supervision. See 20 ILCS 505/5(a) (IDCFS shall "establish and enforce child welfare policies, standards, and procedures"); 89 Ill. Admin. Code § 337.20 (licensing and oversight of childcare institutions). Maryville's provision of residential treatment services thus derived its legal authority entirely from the State.
13. Exhibit C further details the Maryville Defendants' failures in placement monitoring, mandatory reporting of abuse and neglect, and the oversight of custodial living conditions.

14. These are not merely private obligations, but statutory duties imposed by Illinois law and incorporated into IDCFS contracts. See 325 ILCS 5/4 (mandated reporting of child abuse and neglect); 89 Ill. Admin. Code § 331.30 (requiring facility staff to monitor and report incidents). Such duties are governmental in nature, and the performance or failure to perform those duties is conduct "fairly attributable to the State" within the meaning of 42 U.S.C. § 1983.
15. Black's Law Dictionary (11th ed. 2019) defines "state actor" as "a person who is acting on behalf of a governmental body, and whose actions are therefore attributable to the state." By exercising custodial authority over Plaintiff as a ward of the State of Illinois, Maryville staff carried out the responsibilities of the State itself. The delegation of core governmental functions such as custody, care, and protection of minors transforms private conduct into state action.
16. The Supreme Court has long recognized that private entities may be deemed state actors when they perform functions traditionally and exclusively reserved to the state. See West v. Atkins, 487 U.S. 42, 54–57 (1988) (private physician under state contract acted under color of law in treating prisoner); Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982) (private school not state actor absent delegation of exclusive governmental function). Here, unlike in Rendell-Baker, Illinois has a non-delegable duty to provide care to wards of the state, and Maryville was expressly delegated that duty. Courts in this Circuit have held that child welfare institutions and their employees, when operating under state contracts, act under color of law. See K.H. v. Morgan, 914 F.2d 846, 851–52 (7th Cir. 1990) (state liability attaches to placement decisions of private facilities under IDCFS auspices).
17. By receiving IDCFS funding, operating under IDCFS licensure, and exercising custodial authority over Plaintiff, Maryville Defendants were state actors within the meaning of § 1983. Their conduct—including failures to protect, investigate, and report abuse—constituted actions taken "under color of law" and is therefore subject to constitutional scrutiny.

## VI. Adequacy of Pleadings

18. Plaintiff's operative complaint, together with Exhibits B and C, provides detailed factual allegations of unconstitutional misconduct. These include: (a) physical assault by Defendant Marikaw Carr while Plaintiff was in state custody; (b) denial of a safety-driven transfer request by Defendant Sabrina Gaston, despite knowledge of credible risks; (c) neglect of Plaintiff's daily needs by Defendant Evelyn Smith; and (d) deliberate indifference by supervisory staff who ignored repeated written and verbal grievances.
19. These allegations are not general accusations but fact-specific contentions, properly particularized against individual defendants.
20. Plaintiff further pleads that while confined at Maryville, he was subjected to unlawful psychiatric confinement without lawful process; that he suffered sexual assaults by peers in conditions where staff were on notice and failed to intervene; and that his repeated grievances were dismissed or disregarded contrary to statutory and contractual duties of care.

21. (Exhibit B). Exhibit C supplements these facts by identifying failures in placement oversight and mandatory reporting, underscoring the systemic nature of the deprivations.
22. These facts, drawn directly from Plaintiff's complaint, meet Fed. R. Civ. P. 8(a)(2) by presenting "a short and plain statement" of the claims showing entitlement to relief.
23. They establish concrete acts of assault, unlawful confinement, and institutional neglect, tied to the defendants identified by name.
24. Such allegations are sufficient to "nudge" Plaintiff's claims "across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).
25. The constitutional dimensions of these pleadings are clear. Physical assault by custodial staff, deliberate indifference to known risks of sexual violence, and the refusal to process or act upon grievances state claims under the Eighth and Fourteenth Amendments.
26. See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (failure to protect against known risks constitutes deliberate indifference); Youngberg v. Romeo, 457 U.S. 307, 315–16 (1982) (civilly confined individuals have liberty rights to safety); Estelle v. Gamble, 429 U.S. 97, 104–05 (1976) (deliberate indifference to serious medical needs violates the Eighth Amendment).
27. Plaintiff's complaint thus satisfies Rule 8's standard by presenting fact-rich, individualized, and constitutionally significant allegations. The exhibits make plain that these are not bare legal conclusions but detailed accounts of unlawful confinement, physical harm, and supervisory failures that fall within the protections of the Eighth and Fourteenth Amendments.
28. At this stage, no more is required to withstand dismissal under Rule 12(b)(6).

## VII. State-Law Claims and Supplemental Jurisdiction

29. Plaintiff's operative complaint expressly invokes the Abused and Neglected Child Reporting Act (325 ILCS 5/1 et seq.), a statute designed to ensure that professionals entrusted with the care of minors immediately report known or suspected abuse or neglect. Exhibit C, drawn directly from Plaintiff's filings, documents repeated failures by Maryville's staff—who were all mandated reporters under § 4 of the Act—to report instances of physical assault, sexual abuse by peers, and unlawful psychiatric confinement.
30. These failures constitute actionable breaches of a statutory duty imposed by Illinois law and incorporated into the contractual framework under which Maryville operated as an IDCFS delegate.
31. The complaint and exhibits make clear that these statutory violations share a common nucleus of operative fact with Plaintiff's federal claims. The same conduct, failures to protect, to report abuse, and to intervene in ongoing harm, forms the basis of both the constitutional claims under 42 U.S.C. § 1983 and the state-law claims under Illinois statutes.
32. For example, Plaintiff's allegations of peer sexual abuse under staff's watch (Exhibit B) and staff's refusal to act on repeated grievances (Exhibit C) simultaneously demonstrate deliberate indifference under the Eighth and Fourteenth Amendments and statutory breaches under 325 ILCS 5/4.

33. 28 U.S.C. § 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related…that they form part of the same case or controversy under Article III." The Supreme Court has explained that claims derive from the same case or controversy if they "derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).
34. Here, the federal constitutional claims and the Illinois statutory claims arise from the same set of custodial events at Maryville.
35. Exercising supplemental jurisdiction is especially appropriate where, as here, the state-law claims reinforce the federal claims by codifying mandatory protections that mirror federal constitutional guarantees.
36. The state statutory claims amplify, rather than complicate, the federal case, and their adjudication in this forum promotes judicial economy, consistency, and fairness to the parties.
37. Accordingly, Plaintiff's state-law claims under the Abused and Neglected Child Reporting Act are properly before this Court under supplemental jurisdiction, as they are factually intertwined with and legally supportive of the federal claims arising from the same custodial misconduct.
38. Exhibits B through F—drawn directly from Plaintiff's filings—confirm that prior dismissals were voluntary and expressly "without prejudice." Exhibit D (Lake County dismissal) and Exhibits E–F (federal voluntary dismissal and minute entry) show that no adjudication on the merits has ever occurred. Those same exhibits demonstrate that tolling applies to preserve Plaintiff's claims and that the Maryville Defendants acted as state actors by exercising delegated custodial authority under IDCFS contracts and licensing.
39. Plaintiff's operative complaint, supported by Exhibits B and C, sets out specific allegations of physical assault, denial of protective transfer, deliberate indifference to sexual abuse, unlawful psychiatric confinement, and systemic neglect of statutory duties. These are not conclusory assertions but fact-intensive claims identifying individual defendants by name and act. Under Rule 8 and the plausibility standard articulated in *Twombly* and *Iqbal*, such allegations are adequate to state claims for relief under both the Constitution and Illinois statutory law.
40. Dismissal under Rule 12(b)(6) would disregard both the procedural safeguards governing voluntary dismissals and the substantive precedent recognizing claims of custodial abuse and deliberate indifference. Exhibits B through C already show that Plaintiff has stated claims under the Eighth and Fourteenth Amendments, and Exhibit C establishes parallel statutory violations under the Abused and Neglected Child Reporting Act. At this stage, the pleadings must be accepted as true, with all reasonable inferences drawn in Plaintiff's favor.
41. This Court has already exercised its inherent authority and conducted a preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2). That screening required the Court to evaluate whether the claims were frivolous, malicious, or failed to state a claim.

42. The § 1915(e)(2) standard mirrors the Rule 12(b)(6) plausibility requirement. By allowing the Amended Complaint to proceed past screening, the Court has already determined that Plaintiff's allegations, as pled, are facially plausible and grounded in law.
43. In doing so, the Court necessarily found that Plaintiff's claims were neither frivolous nor implausible. The Defendants' Motion to Dismiss is therefore an attempt to reargue issues that have already been judicially reviewed and resolved at the gatekeeping stage.
44. Because the Amended Complaint sets forth plausible constitutional and statutory claims supported by detailed factual allegations, and because prior dismissals were without prejudice, the Defendants' Motion to Dismiss should be denied in its entirety.

## VIII. The Operative Complaint Governs and Is Narrower Than Prior Pleadings

45. Defendants' reliance on superseded pleadings is procedurally misplaced. The Court is required to evaluate the adequacy of the operative Amended Complaint filed on March 17, 2025, not prior versions. The Seventh Circuit has made clear that "an amended complaint supersedes all prior complaints and becomes the operative pleading." Wellness Community-National v. Wellness House, 70 F.3d 46, 49 (7th Cir. 1995).
46. Plaintiff's Amended Complaint is materially narrower than earlier iterations. Whereas prior pleadings named more than ten defendants and advanced multiple broad theories, the Amended Complaint identifies a limited set of Maryville defendants and alleges individualized acts of misconduct. This narrowing reflects good-faith refinement in accordance with federal pleading standards and the Court's prior guidance, promoting judicial efficiency and fairness.
47. Specifically, the Amended Complaint attributes: (a) physical assault to Defendant Marikaw Carr; (b) denial of a protective transfer to Defendant Sabrina Gaston; (c) neglect of daily needs to Defendant Evelyn Smith; (d) deliberate supervisory indifference to Defendant Lance Wells; and (e) failures to intervene to identified John/Jane Doe staff members. Each of these allegations is tied directly to Counts I–IV, which are grounded in the Eighth and Fourteenth Amendments and parallel statutory duties under Illinois law.
48. By contrast, prior pleadings aggregated claims against a larger array of parties and contained unrelated factual theories. The present complaint is tailored, fact-specific, and legally distinct from those earlier versions. Far from constituting harassment or abuse of process, the refinement demonstrates Plaintiff's compliance with Rule 8 and Rule 11 obligations to streamline litigation.
49. Defendants' reliance on Rule 41(a)(1)(B)'s "two-dismissal rule" is equally unavailing. That provision applies only when the same claim against the same defendant has been voluntarily dismissed twice. The Seventh Circuit construes the doctrine narrowly to prevent harassment, not to punish litigants for good-faith amendments. LeBeau v. Taco Bell, Inc., 892 F.2d 605, 607 (7th Cir. 1989); see also Dvorak v. Metropolitan Pier & Exposition Authority, 941 F.3d 936, 939–40 (7th Cir. 2019) (two-dismissal rule requires identity of claims and defendants and is applied with caution).
50. Moreover, prior dismissals here were expressly "without prejudice." Exhibit D (Lake County order) and Exhibits E–F (federal voluntary dismissal and minute entry) confirm

that no merits adjudication has ever occurred. As the Supreme Court emphasized in Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 505–06 (2001), a dismissal without prejudice does not extinguish substantive rights or bar subsequent refiling absent adjudication on the merits.

51. Correctly applied, Rule 41(a)(1)(B) does not operate to bar Plaintiff's present action. The operative Amended Complaint is narrower, legally distinct, and procedurally proper. Dismissal on the basis of prior pleadings would contravene the Federal Rules' preference for resolution on the merits and penalize Plaintiff's good-faith effort to refine the case in accordance with this Court's direction.

**IX. Defendants' Motion to Dismiss Fails for Lack of Specificity in Representation and Improper Joint Defense Posture**

44. The Motion to Dismiss is procedurally defective because defense counsel does not identify which defendants she specifically represents in each argument and the specific examples of the facts and laws she relies upon for dismissal.
45. Instead, counsel refers generically to "Defendants," names several individuals in the caption, and lists her law firm, without ever clarifying which defendant asserts which argument.
46. Federal Rule of Civil Procedure 11(a) requires that every filing be signed by an attorney of record, and that signature certifies that the attorney is authorized to represent the particular parties. The Rules do not permit filings on behalf of "Defendants" as a class without delineating which defendant is advancing which position.
47. A law firm is not a "person" within the meaning of § 1983, nor is it a party to this action. The attorney of record, not the law firm, represents the defendant(s). By styling the motion under the name of the law firm and referring to "Defendants" without specification, counsel has obscured the actual parties making the arguments.
48. This prejudices Plaintiff by depriving him of a fair opportunity to respond party-by-party, as is required in civil rights litigation where liability is based on individual actions under color of law.
49. This deficiency is particularly acute in § 1983 litigation, where liability is personal and grounded in each defendant's own conduct. See *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986) ("An individual cannot be held liable in a § 1983 action unless he caused or participated in the alleged constitutional deprivation."). The Seventh Circuit has repeatedly emphasized that "each defendant is entitled to know what he or she did that is asserted to be wrongful." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009). Likewise, § 1983 claims cannot proceed on undifferentiated "group pleading." See *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998); *Williams v. Ramos*, 71 F.3d 1246, 1250–51 (7th Cir. 1995).
50. For example, Plaintiff's Amended Complaint alleges distinct misconduct by Marikaw Carr (physical assault), Sabrina Gaston (denial of protective transfer), Evelyn Smith (neglect), Lance Wells (supervisory indifference), and unidentified floor staff (failure to intervene).

51. Each defendant's liability rests on different facts and legal theories. Yet counsel's filing does not specify which arguments apply to which defendant, effectively depriving Plaintiff of the ability to tailor his opposition to the individualized conduct pled against each defendant.
52. The use of a single attorney to represent all named defendants with potentially conflicting liability further compounds the prejudice. In § 1983 cases, conflicts of interest often arise when one lawyer represents multiple defendants accused of different acts of abuse or indifference. See *Bank of America, N.A. v. Knight, 725 F.3d 815, 818 (7th Cir. 2013) ("Liability is personal. A complaint based on a theory of collective responsibility must be dismissed.").* Here, counsel's joint representation permits defendants to shift blame collectively while denying Plaintiff the clarity needed to respond to each party's defense.
53. Bringing this defect to the Court's attention is necessary because it prejudices Plaintiff by: (a) obscuring which defenses apply to which defendant; (b) giving Defendants the opportunity to "double down" in reply briefs by newly allocating arguments defendant-by-defendant; and (c) impairing Plaintiff's ability to meaningfully respond under Rule 12(b)(6). This lack of clarity offends both Rule 8's requirement of fair notice, see *NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992), and the Due Process Clause, which requires meaningful notice and opportunity to respond. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).
54. Accordingly, the Motion to Dismiss should be denied, or in the alternative, the Court should require defense counsel to amend or clarify the filing to identify, with specificity, which defendant makes which argument.
55. Anything less deprives Plaintiff of fair notice, undermines the adversarial process, and prejudices Plaintiff's ability to prosecute his claims.

**X. Final Corrective Statement**

56. Defendants' Motion to Dismiss is not a proper Rule 12(b)(6) submission but an attempt to obscure individualized liability, recycle arguments already reviewed at the screening stage, and avoid accountability through procedural shortcuts.
57. At the outset, this Court has already screened the operative Amended Complaint under 28 U.S.C. § 1915(e)(2). That statutory gatekeeping function mirrors the Rule 12(b)(6) plausibility standard.
58. By allowing the Amended Complaint to proceed past screening, the Court necessarily determined that Plaintiff's allegations were non-frivolous, facially plausible, and grounded in law.
59. Defendants now ask the Court to revisit and reverse that preliminary determination without presenting new grounds.
60. Further, Defendants' reliance on collective briefing deprives Plaintiff of meaningful notice.
61. Accrual and tolling are inherently defendant-specific inquiries, tied to the conduct and knowledge of individual actors.
62. By failing to delineate which defendant raises which defense, Defendants force Plaintiff to answer arguments in the abstract, undermining the adversarial process and violating

both Rule 8's fair-notice requirement and due-process principles articulated in *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The prejudice is compounded by the attempt to obscure conflict-laden joint representation.

63. Multiple defendants, accused of different acts of custodial misconduct, now present a unified defense without clarifying their distinct positions.
64. This posture creates the risk of shifting arguments in reply and shields each defendant from individualized scrutiny, contrary to settled Seventh Circuit law that "liability is personal." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).
65. Allowing such a motion to proceed would not only prejudice this Plaintiff but also set a precedent rewarding imprecise and evasive defense practice.
66. The Federal Rules demand clarity, specificity, and accountability from all litigants, particularly where liberty interests and constitutional violations are at stake.
67. Accordingly, this Court should deny Defendants' Motion to Dismiss in its entirety. In the alternative, the Court should order defense counsel to file an amended motion that, for each defendant, (a) identifies the accrual date asserted, (b) specifies the tolling doctrine challenged, and (c) states the factual basis relied upon. Anything less undermines the adversarial process and deprives Plaintiff of the ability to prosecute his claims fairly and effectively.

## Prayer for Relief

For the foregoing reasons, and as supported by Exhibits B through F and the operative Amended Complaint, Plaintiff respectfully submits that Defendants' Motion to Dismiss is legally unfounded and procedurally improper. The record confirms that:

1. Prior dismissals were voluntary and without prejudice, carrying no adjudicatory effect on the merits;
2. Plaintiff's claims have been timely preserved through applicable tolling doctrines.
3. The Maryville Defendants acted as state actors under color of law by exercising delegated custodial authority from IDCFS.
4. The Amended Complaint pleads factually detailed allegations of constitutional and statutory violations, sufficient under *Twombly* and *Iqbal*; and
5. This Court has already screened the Amended Complaint under 28 U.S.C. § 1915(e)(2), applying the same standard as Rule 12(b)(6), and found the claims non-frivolous and plausible.

Dismissal at this stage would contravene both procedural protections and substantive precedent and would improperly foreclose Plaintiff's right to have his claims adjudicated on the merits.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss in its entirety, permit this action to proceed to discovery, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/S/ Robert Q.T. Bettis

**Robert Q.T. Bettis**
Pro Se / Self-Represented Litigant
1509 27th Street, Apt. 5
Zion, Illinois 60099
Tel: 847-652-1079
Email: robert.qt.bettis@gmail.com

## Certificate of Service

I, Robert Q.T. Bettis, hereby certify that on this 15th day of September, 2025, I caused a true and correct copy of the foregoing *Plaintiff's Opposition to Defendants' Motion to Dismiss* to be served via, **CM/ECF (Case Management/Electronic Case Files)**. upon the following counsel of record:

**Amanda L. Zink**
ARDC No. 6283384
Lipe Lyons Murphy Nahrstadt & Pomtikis, Ltd.
230 W. Monroe Street, Suite 2260
Chicago, Illinois 60606
Tel: (312) 448-6230
Email: ALZ@lipelyons.com

Respectfully submitted,

**Robert Q.T. Bettis**
Pro Se / Self-Represented Litigant
1509 27th Street, Apt. 5
Zion, Illinois 60099
Tel: 847-652-1079
Email: robert.qt.bettis@gmail.com